Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4599 | **DATE** | 3/26/2002 |
| **CASE TITLE** | Master Tech Products, Inc. vs. Prism Enteprises, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: For the foregoing reasons, we grant defendant Prism's motion for summary judgment [27-1] regarding the preemption issue. Accordingly, we grant summary judgment in Prism's favor on Counts I, III, and V of the amended complaint. Prism's other motion for summary judgment [42-1] on Counts II and IV is denied.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAR 27 2002 date docketed | |
| ✓ | Docketing to mail notices. | | 82 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TSA | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAR 27 2002

| MASTER TECH PRODUCTS, INC. | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 00 C 4599 |
| PRISM ENTERPRISES, INC. | ) Wayne R. Andersen |
| | ) District Judge |
| Defendant. | ) |

## MEMORANDUM, OPINION AND ORDER

This case is before the Court on two motions of defendant Prism Enterprises, Inc. for summary judgment pursuant to Fed.R.Civ.P. 56. For the following reasons, we grant Prism's motion for summary judgment on the preemption issue and deny the motion for summary judgment on the merits of the claims.

## BACKGROUND

Plaintiff Master Tech is a small company owned by Richard Konter. Defendant Prism is a manufacturing company that manufactures and sells products used in the automotive repair field. In 1996, Master Tech developed the idea for a radiator cap that would fit most radiators and reservoir openings. A problem which occurs in pressure testing automotive radiators is that the various automotive manufacturers have various sizes of radiator and reservoir openings. This requires a repair shop to stock a number of different size testing caps which would accept pressure from a pump while fitting a radiator or reservoir opening. Master Tech called its product the "Uni-Cap." Master Tech never obtained a patent on its Uni-Cap product.



In the fall of 1997, Uni-Cap was formally introduced to the marketplace. In January, 1998, Uni-Cap was sold for use. Uni-Cap was well received by the marketplace, and Master Tech started receiving substantial orders. At some point, although the parties dispute the exact date, Master Tech had a booth at a trade show to display its products. At that show, Jim Moore, an employee of Prism, expressed interest in the Uni-Cap and purchased a Uni-Cap device.

The parties talked at a later date, and Mr. Moore told Mr. Konter that Prism was interested in Master Tech's products and Master Tech's business. After discussing the matter, Mr. Moore stated that he would be in further contact with Master Tech regarding the possible acquisition.

Master Tech then began to experience a large number of returns of the Uni-Cap devices, due to defective casting and manufacturing techniques by W.R Brown Company, the manufacturer that Master Tech solicited to manufacture its products. Master Tech discontinued doing business with W.R. Brown Company, which eventually went into bankruptcy. After delays, Master Tech began manufacturing the Uni-Cap itself, using a different foundry for the casting. As a result of the problems, Master Tech experienced substantial delays in filling orders and, as a result, Master Tech suffered financial losses.

In the summer of 1998, the parties talked again regarding a possible purchase of Master Tech. Prism requested a disclosure of confidential information from Master Tech. However, before Master Tech would disclose such information, it requested protection in the form of a confidentiality agreement. In August, 1998, Master Tech sent a proposed confidentiality agreement to Brian Mitchell, an employee of Prism. That confidentiality

2

agreement was signed by Mr. Mitchell on August 18, 1998 and was returned to Master Tech.

Master Tech then began disclosing information about itself and its products to representatives of Prism. On August 29, 1998, Prism wrote to Master Tech itemizing additional information Prism wanted. Master Tech claims that it sent the requested information to Prism in a letter dated September 11, 1998, while Prism claims that Master Tech neglected to send key information. Master Tech claims that it disclosed additional information to Prism during subsequent telephone conversations. At some point, discussions between the Master Tech and Prism broke down and they stopped communicating.

Master Tech continued producing the Uni-Cap product. In mid-1999, Master Tech learned that Prism had announced that it was coming out with a product to compete with the Uni-Cap and that Prism's product was being priced substantially lower than the Uni-Cap. In 1999, Prism did start marketing such a product under the name "Universal Radiator Adapter." There is no dispute that the Universal Radiator Adapter is similar in design to plaintiff's Uni-Cap device. This lawsuit was filed shortly thereafter.

In its amended complaint, Master Tech claims that Prism acted maliciously and willfully and wantonly in obtaining confidential information from Master Tech by deception. Master Tech further claims that Prism used the confidential information to drive Master Tech out of the market and destroy its business. Master Tech's amended complaint alleges five counts against Prism: fraud (Count I); breach of contract (Count II); violation of the Illinois Consumer Fraud Act (Count III);violation of the Illinois Trade Secrets Act (Count IV); and violation of the Illinois Antitrust Act (Count V).

## DISCUSSION

The court will grant summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.56(c). The Court will not render summary judgment if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The mere possibility of a factual dispute is not enough to defeat a summary judgment motion. Id. at 250; Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).

I. Preemption

Prism argues that Master Tech's claims for fraud (Count I), violation of the Illinois Consumer Fraud Act (Count III), and violation of the Illinois Antitrust Act (Count V) are preempted by the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/1 et seq.

Under Section 8 of the ITSA, non-contract causes of action are preempted to the extent that they are based on a misappropriation of trade secrets. Specifically, Section 8(a) states:

> Except as provided in subsection (b), this Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret.

The ITSA's preemption provision, however, is not without limits. Section 8(b) provides that the ITSA does not affect or displace:

> (1) contractual remedies, whether or not based upon misappropriation of a trade secret . . .:
>
> (2) other civil remedies that are not based upon misappropriation of a trade secret;

4

(3) criminal remedies, whether or not based upon misappropriation of a trade secret; or

(4) the definition of a trade secret contained in any other Act of this State.
765 ILCS 1065/8(b).

The Seventh Circuit has noted that with the passage of the ITSA, "Illinois . . .abolished all common law theories of misuse of [secret] information". Composite Marine Propellers, Inc. v. Van Der Woude, 962 F.2d 1263, 1265 (7th Cir. 1992). Moreover, the ITSA was meant to "codify all the various common law remedies for theft of ideas." Learning Curve Toys, L.P. v. Playwood Toys, 1999 WL 529572, *3 (N.D. Ill. 1999).

In this case, Prism argues that all of the counts contained in Master Tech's amended complaint arise from an alleged misappropriation of trade secrets. Therefore, Prism argues that other than the breach of contract and ITSA causes of action, Master Tech's claims are in violation of Section 8 of ITSA. Prism argues that all of Master Tech's claims in Counts I, III, and V boil down to the following allegation: Prism intentionally gained access to Master Tech's alleged secret information and used that information to drive Master Tech out of business.

We will review the challenged counts of the amended complaint to determine whether they are based on a misappropriation of trade secrets or based upon other theories.

A. Fraud and Consumer Fraud Act Claims

In Counts I and III, Master Tech alleges that Prism committed fraud and deception by representing "that it was interested in acquiring plaintiff or its assets, that Prism would use confidential information disclosed to it by plaintiff solely for the purpose of evaluating the possible acquisition, and that Prism would not use the confidential information obtained from plaintiff for its own benefit or to the detriment of plaintiff." Master Tech claims that without

5

Prism's alleged misrepresentations, Master Tech would not have disclosed any confidential information to Prism.

All of these allegations amount to a claim that Prism misrepresented, concealed and lied about the taking and use of Master Tech's confidential information. As such, these allegations simply restate Master Tech's claim for misappropriation of trade secrets. Similar attempts at bulking up a complaint by adding duplicative claims for relief have been rejected by many other courts. See e.g., Thomas & Betts Corp. v. Panduit Corp., 108 F. Supp.2d 968 (N.D. Ill. 2000); Ace Novelty Co. v. Vijuk Equipment, Inc., 1990 WL 129510 (N.D. Ill. 1990).

For these reasons, we find that Master Tech adds nothing to its ITSA claim by alleging that Prism lied about misappropriating a trade secret. Thus, Master Tech's fraud and Consumer Fraud Act claims are preempted by the ITSA, and we grant Prism's motion for summary judgment with respect to Counts I and III.

B. Illinois Antitrust Act Claim

In Count V, Master Tech alleges a cause of action under the Illinois Antitrust Act, 740 ILCS 10/3(3). In this count, Master Tech alleges that Prism engaged in anti-competitive behavior when it improperly took and used Master Tech's confidential information to drive Master Tech out of the market to the detriment of consumers.

We find that this count also is preempted by the ITSA. Master Tech attempts to distinguish its antitrust claim from its trade secrets claim by adding bald assertions that "[d]efendant established monopoly power, . . .and engaged in predatory conduct against Plaintiff." However, the gist of the claim is that Prism improperly acquired Master Tech's secret information and used that information to drive Master Tech out of the market, which is simply a

restatement of the trade secrets claim.

Master Tech's claim of violation of the Illinois Antitrust Act is analogous to the plaintiff's counts of unfair competition in Thomas & Betts, 108 F. Supp.2d 968. In that case, the plaintiff supported its counts of unfair competition with details of the various business strategies that the defendant company had implemented in its effort to exploit the confidential information taken from plaintiff. Id. at 973. In granting summary judgment for the defendant, the court held that "[t]hese factual allegations, though lengthy, simply describe how defendants used the confidential information taken from [the plaintiff]. As such, the allegations are a restatement of [the plaintiff's] misappropriation of trade secrets claim. . . . Section 8 expressly preempts such allegations." Id.

We find that the allegations of Master Tech's antitrust action merely restate its claim for misappropriation of trade secrets. Therefore, we find that Master Tech's claim for a violation of the Illinois Antitrust Act is preempted by the ITSA, and we grant Prism's motion for summary judgment on Count V.

II. Merits Of The Remaining Claims

Pursuant to the preemption analysis above, we have granted summary judgment in favor of the defendant Prism on Count I (fraud), Count III (Consumer Fraud Act), and Count V (Illinois Antitrust Act). Therefore, we will analyze Prism's remaining motion for summary judgment only as to the remaining counts–Count II (breach of contract) and Count IV (Illinois Trade Secrets Act).

A. Illinois Trade Secrets Act

Prism argues that it is entitled to summary judgment on Master Tech's claim of a

7

violation of the Illinois Trade Secrets Act because Master Tech has failed to establish the prima facie elements of trade secret misappropriation. Prism argues that Master Tech has produced no evidence showing what, if any, trade secrets exist and whether Prism actually incorporated the trade secrets into its new product, the Universal Radiator Adapter.

The Illinois Trade Secrets Act, 765 ILCS 1065, et seq. prohibits misappropriation of trade secrets. The Act states:

> "Trade Secret" means information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
>
> > (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

The ITSA establishes a two step analysis for trade secret misappropriation claims. Thermodyne Food Serv. Prod. v. McDonald's Corp., 940 F. Supp. 1300, 1304 (N.D. Ill. 1996). Plaintiff must establish: 1) that it had a trade secret; and 2) that the secret was misappropriated. Thus, plaintiff bears the initial burden of producing evidence that it possessed a trade secret and must ultimately persuade a trier of fact that the secret was misappropriated. Thermodyne, 940 F. Supp. at 1307.

1. The Information

We first note that a trade secret "may include a compilation of confidential business and financial information." See Southwest Whey, Inc. v. Nutrition 101, Inc., 117 F. Supp.2d 770, 775 (C.D. Ill. 2000). The key inquiry in ascertaining whether information is a trade secret under

8

the ITSA is the secrecy of the information sought to be protected. Courts often look to how easily information can be duplicated without involving substantial time, effort, or expense. Id.

Master Tech claims that it provided confidential information to Prism in a September 11, 1998 letter and in subsequent telephone conversations. Specifically, Master Tech claims that it disclosed the following secret and proprietary information to Prism: its customer base; design and development information, including information regarding what molds were used; cost structure and pricing; financial problems associated with the product; research and development; and marketing strategy.

We find that the compilation of this business and financial information could constitute a trade secret. A "trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process design and operation of which in unique combination affords a competitive advantage and is a protectable trade secret." Thermodyne, 940 F. Supp. at 1305.

Prism would have been required to expend considerable time and money in order to replicate, on its own, the information provided by Master Tech. Moreover, it appears as though Master Tech derived an economic value from the secrecy of the information because it was making a profit prior to encountering manufacturing difficulties. At the very least, there is a question of fact as to whether the information disclosed pursuant to the confidentiality agreement is sufficiently "secret" so as to constitute secret information under the ITSA.

2. Efforts To Maintain The Secrecy Of The Information

Next, we examine the efforts of Master Tech to maintain the secrecy of the information. "[I]f the owner failed to undertake reasonable efforts to prevent the trade secret from falling into

9

the hands of competitors, the law will not provide the owner a remedy; in essence, the owner will be deemed to have abandoned the trade secret." Thermodyne, 940 F. Supp. at 1306-07.

We find that Master Tech took some steps to keep its information private by insisting on the signing of the confidentiality agreement. Although peddling ones wares at a trade show usually flies in the face of keeping the product information secret, there is some evidence that only Master Tech knew the entire process or the whole package of characteristics and components of the Uni-Cap device. Thus, it is at least a question of fact whether Master Tech took appropriate steps to keep its information secret.

### 3. The Alleged Misappropriation

As stated previously, a plaintiff needs to show not only the existence of trade secrets, but also that the information was, in fact, misappropriated and used by the defendant. 765 ILCS 1065/2(b)(2); Southwest Whey, 117 F. Supp. 2d at 775. Master Tech argues that Prism used Master Tech's secret information to copy the Uni-Cap product and enter the market quickly. Prism argues that it did not use any of Master Tech's alleged confidential information relative to the design, development, production, marketing or decision to bring its product to market. Rather, Prism claims that it developed and brought its Universal Radiator Adapter device to market according to its own established procedures.

In this case, there is at least an issue of material fact as to whether Prism gained a significant head start in their operation by using the alleged trade secret information they learned from Master Tech. See Minnesota Mining & Manufacturing Co. v. Pribyl, 2001 U.S. App. LEXIS 16771 (7th Cir. 2001). It is at least arguable that Prism obtained Master Tech's alleged secret information and used that information to enter the market with a virtually identical

product.

Accordingly, resolving reasonable inferences in favor of Master Tech, we are reluctant to decide this matter on summary judgment. For these reasons, we deny Prism's motion for summary judgment on Count IV of the amended complaint.

B. Breach Of Contract

In Count II, Master Tech alleges a claim against Prism for breach of the parties' confidentiality agreement. Under Illinois law, a plaintiff must prove each of the following elements in order to recover for breach of contract: 1) the existence of a valid and enforceable contract; 2) performance by the plaintiff; 3) breach of the contract by the defendant; and 4) resulting injury to the plaintiff. Applied Industrial Materials v. Mallinckrodt, 102 F. Supp.2d 934, 937 (N.D. Ill. 2000). The confidentiality agreement at issue states that Master Tech is providing secret information and that the information cannot be used to benefit Prism to the detriment of Master Tech.

In this case, the third element is disputed, i.e. whether the confidentiality agreement was breached by Prism. Master Tech alleges that Prism breached the signed confidentiality agreement by using Master Tech's confidential information to bring Prism's own product to market and drive Master Tech out of business. Prism's only argument in support of its motion for summary judgment is that anytime a breach of contract claim is based upon the defendant's breach of a confidentiality agreement, the breach of contract claim must fail if the court finds that the information disclosed was not a "trade secret." Since we have already ruled that the information in question could constitute a trade secret, this argument fails. Moreover, an issue of fact exists as to whether Prism used the information Master Tech furnished either for Prism's

11

own benefit or to Master Tech's detriment in breach of the agreement.

For these reasons, Prism's motion for summary judgment as to Count II is denied.

## CONCLUSION

For the foregoing reasons, we grant defendant Prism's motion for summary judgment (# 27-1) regarding the preemption issue. Accordingly, we grant summary judgment in Prism's favor on Counts I, III, and V of the amended complaint. Prism's other motion for summary judgment (# 42-1) on Counts II and IV is denied.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: March 26, 2002